IN THE MATTER OF THE COMMITMENTS OF CHARLES AND
ANGELINA CONNELL OR CORNELL, AND FREDERICK ELK;
TO THE HOUSE OF REFUGE.

IN the cases of Charles Henry Cornell and Angelina
Cornell, the children of Samuel Cornell, or Connell,
committed to the House of Refuge on the complaint of
the father of the said children, and which were brought
under supervision, at my sitting at the house of refuge,
on the 28th June, 1845, I have thought proper to give
the reasons which have determined the decision in the
premises.

The commitments of the magistrate, by the authority
of which the said children are placed in the custody of
the house of refuge, set forth that the said Angelina is
"an indentured apprentice," and the said Samuel "was
bound," to two several employers. That the said Sam-
uel "has absconded from his father's service," and that
he has no control over him, "and that the said Angelina
absconded from her employer, and refused to return,
and since hath absconded from her father." These
statements are supported, alone upon the testimony of
the father; the employer of neither of the children being
examined, as appears by the commitments.

The slight and unsatisfactory, and indeed, insuffi-
cient character of this testimony, is not the only ground
on which the decision in these cases rests.

The act of assembly conferring the authority on the
said house of refuge to receive and detain such children

as may "be deemed proper objects"—enacts that "the said managers shall at their discretion receive into the said house of refuge such children who shall be taken up or committed as vagrants, or upon any criminal charge, or duly convicted of criminal offences," &c. 6th sect. act 23d March, 1826.

By a supplement to the above act, passed April 10, 1835, it is enacted that "Infants committed by an alderman or justice of the peace, on the complaint and due proof made to him by the parent, guardian, or next friend of such infant, that by reason of incorrigible or vicious conduct, such infant has rendered his or her control beyond the power of such parent, guardian, or next friend, and made it manifestly requisite that from regard for the morals and future welfare of such infant, he or she should be placed under the guardianship of the managers of the house of refuge." 2d. Infants committed by the authority aforesaid, where complaint and the proof have been made that such infant is a proper subject for the guardianship of the managers of the house of refuge in consequence of vagrancy, or of incorrigible or vicious conduct, and that from the moral depravity or otherwise of the parent, or next friend, in whose custody such infant may be, such parent, or next friend, is incapable or unwilling to exercise the proper care and discipline, over such incorrigible or vicious infant. 3d. Infants committed by the courts of the commonwealth, in the mode provided by the act to which this is a supplement, the said managers may receive such infant, &c. This act repeals the provisions of the 6th sect. of the act of 26th March, so far as that act relates to causes of complaint against infants.

13

By both these laws the *persons* duly authorized to make complaint, are the "parent, guardian, or next friend," and the *only causes* for "complaint" rendering the infant a "proper subject," are, "vagrancy or incorrigible or vicious conduct," or "duly convicted of a criminal offence"—or on account of, or by reason of the "moral depravity or otherwise of the parent, or next friend, to whose custody such infant may be; such parent, or next friend, is incapable or unwilling to exercise the proper care and discipline over such incorrigible or vicious infant."

These, then, being the only persons authorized by the act to make complaint, and the causes of complaint thus fully set out, it follows that no other person can, or any other cause require, the managers of the house of refuge to receive an infant. Indeed, the receiving or detaining any infant on any other grounds than those defined by the statute, is illegal, and carries with such reception or detention, all the legal penalties therefor.

The commitments in the cases now under consideration, show upon their face that these infants *are apprentices to two several employers.* The master or mistress of an apprentice cannot make the complaint necessary for the committal of any such apprentice, into the custody of the house of refuge. They are not in the relation to such apprentice for such a purpose, under the intent and clear meaning of the several acts of assembly, as "parent, guardian, or next friend." The legal rights of "parents" grow out of the common law—of their natural rights it is not necessary to speak. "Guardians" stand in the relation of parents, and have certain legal rights prescribed by the courts having jurisdiction

in the premises. The relations of a "next friend" to infants, are merely nominal. "A next friend is one who, without being a guardian, sues in the name of an infant for the recovery of the rights of the latter," and "has also the power to bind an infant apprentice;" see Roach's case, 1 Ashm. 27. In Com. *v.* Kendry, 1 S. & R. 366, it is held, that "the master of an apprentice cannot act as *next friend*, so as to give validity to an indenture executed by him as such." Quere, can a master as next friend, do any act as such "next friend," to invalidate an indenture, which he entered into, without the legal steps be taken to cancel such indenture? See also Bonnell *v.* Brotzman, 3 W. & S. 178.

A parent may be the guardian and next friend of an infant. In the two latter capacities, his control is for specific purposes, and as guardian, subject to the supervision of the court appointing him as such. In all these relations, such parent, or guardian, or next friend, can make complaint against the infant, and cause it to be placed in the custody of the house of refuge, if the infant be a vagrant, incorrigible, or vicious; and if the parent or next friend be morally depraved, or is unwilling or incapable to exercise the proper care and discipline over such incorrigible vicious infant, it can also be committed to the house of refuge. No reference is made, in the latter portion of the act, to the moral depravity of the "guardian," for in that case the court would be called upon to remove such guardian, and appoint one suitable for his trust.

The act referred to is silent also in regard to masters or mistresses of apprentices; and it cannot be supposed that this silence was unintentional, or that so well

known and long established a legal character, as master or mistress, was intended to be merged in the equally well defined capacity of parent, guardian, or next friend. The relations existing between master and apprentice are positively declared by the acts of assembly in regard to apprentices, passed the 29th of September, 1770, and the 11th of April, 1799. By the several sections of said acts, the duties of masters and apprentices are established—and the mode is pointed out for the treatment and management, correction, or punishment by law of either and both, who shall violate the provisions of the law. The binding relations thus established are covenants between the parties. The indenture, the proof of such apprenticeship, is in due form of law, under seal, and contains penalties for the violation of its conditions.

By the 2d section of March, 1790, it is provided, that if "any master or mistress shall misuse, abuse, evilly treat, or shall not discharge his or her duty towards his or her apprentice, according to the covenants or indentures between them made, or if the said apprentice shall abscond or absent himself or herself from his or her master or mistress' service without leave, or shall not do and discharge his or her duty to his or her master or mistress, according to his or her covenants aforesaid, the master, or mistress, or apprentice, as the case may be, shall be arrested by the warrant of a magistrate; and if on hearing, the difficulties cannot be settled, the party complained against shall be bound or committed to appear at the proper court, to be farther dealt with, according to the farther provisions of the act."

These are the modes pointed out by law, to correct the violations of duty between masters and apprentices

—besides other legal remedies for any infractions of the several covenants in the indentures of apprenticeship.

So jealous is the statute of any interference between masters and apprentices, and to prevent masters from having excuses for violating their covenants with their apprentices, or the apprentice from giving cause for such violations, that the 4th section of the same act makes it a penal offence to "harbour, conceal, or entertain," any such apprentice against the master's consent, or without giving notice thereof. The law establishing the house of refuge does not repeal directly, or by implication, this important law defining the relative duties and obligations of master and apprentice. It is therefore, in full force.

The legislature was aware of the character of the act of 1790, and wisely denied to masters the right, on the several causes of complaint set forth in the acts of 1826 and 1835, effectually to annul the solemn conditions and covenants of the indentures of apprenticeship. The act of 1790, having provided the means whereby alone such cancellation could be effected, as the only legal mode of relieving the parties from their mutual obligations. Independent of the illegality, on positive statutory grounds, it would be an ex parte mode of violating a contract with the apprentice, on the part of the master, which the apprentice could not have as against the master, and thus the equality of the contracting parties to an indenture of apprenticeship would be destroyed. By the act of 1790, they were placed, as all contracting parties, on an equal footing as to their power to contract, as well a mutuality of right in remedies, for a violation of their several obligations. And, again, the

13*

manifest impolicy of giving such a construction to the acts of 1826 and 1835, as will allow masters and mistresses of apprentices to take advantage of their provisions, is apparent; while it may well be doubted whether if such a law had been made, it would not be in violation of provisions of the constitution of the United States, "as impairing the obligations of contracts."

If a master or mistress can thus, at his or her own option, by simply stating that his or her apprentice is vicious, be exempt from the duty of imposing such correction, as the law gives the power to impose for the welfare of the apprectice, and can have the apprentice placed in the custody of the house of refuge, under the acts of 1826 and 1835, what redress can the apprentice have against such master or mistress, for the non-performance of the several conditions in the indentures? If the law allows the same summary proceedings as to apprentices, as these acts contemplate as to infants who are "proper subjects for the house of refuge," it enables a master to avoid the performance of the conditions of the indentures, and thus an artful master or mistress could defraud the apprentice out of the benefits of their several covenants. I cannot believe that this was ever the intention of the legislature, and I am of opinion that the acts of 1826 and 1835, do not recognise the right of masters or mistresses to come within their several provisions.

The complaints, in both these cases, are made by the father of these infants, who are apprentices. The father has no ground for complaint in this way. He must compel the master or mistress to perform their duties

first, and if they cannot, or will not, the indentures must be cancelled; and if, after that, the parent's authority is exercised in vain, then, and not until then, can a parent invoke the provisions of the act referred to.

These children are discharged.

The act of 1835 repeals the 6th sect. of the act of 1826. The only causes, then, furnishing ground for complaint against an infant, are, "vagrancy, or incorrigible or vicious conduct"—so far as a magistrate has jurisdiction. In the case of Frederick Elk, who is charged with "having stolen sixteen dollars," and "being an idle and worthless fellow," there is no ground of complaint under the act, of which a magistrate has the summary powers, given for the offences already enumerated. He is charged with "a criminal offence" which in itself does not constitute him incorrigible or vicious. For this offence he can be placed in the custody of the house of refuge, under the express provisions of the act, *only* after conviction before a proper tribunal. The magistrate had no authority to commit him to the house of refuge for this "criminal offence." *He is therefore discharged.*